**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK**

_____

JOE KNAPP and CHAD NOTEBAERT,

                                  Plaintiffs,

            -vs-                               DECISION AND ORDER

BADGER TECHNOLOGIES, INC., DELTA POINT      12-CV-6637-CJS-MWP
CAPITAL MANAGEMENT, LLC, BTI ACQUISITION,
INC., and DELTA POINT CAPITAL, III, L.P.,

                                Defendants.
_____

**APPEARANCES**

For Plaintiffs:                    David C. Tufts, Esq.
                                M. Vance McCrary, Esq.
                                Mary E. Olsen, Esq.
                                The Gardner Firm, P.C.
                                210 S. Washington Avenue
                                Mobile, AL 36602
                                (251) 433-8100

                                Stuart J. Miller, Esq.
                                Lankenau & Miller LLP
                                132 Nassau Street, Suite 423
                                New York, NY 10038
                                (212) 581-5005

                                Mary L. Fangio, Esq.
                                Whitelaw & Fangio
                                247-259 W. Fayette St.
                                Syracuse, NY 13202
                                (315) 472-7832

For Defendants:       Jeffrey J. Calabrese, Esq.
              Andre Leon Lindsay, Esq.
              Luke Peter Wright, Esq.
              Harter, Secrest & Emery LLP
              1600 Bausch & Lomb Place
              Rochester, NY 14604-2711
              (585) 231-1280

**INTRODUCTION**

This is a proposed class action alleging violations of the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101–09 ("Federal WARN Act"), and its New York State counterpart, New York Labor Law §§ 860[1] *et seq.* ("NY WARN Act") (collectively "WARN Acts"). Now before the Court is a joint motion for an order giving final approval to certification of this matter as a class action, approving of the form and manner of notice to the class, and approving a proposed settlement. Joint Motion, Oct. 10, 2014, ECF No. 52. As part of the proposed settlement, Plaintiffs seek the Court's approval of an award of attorneys' fees and expenses, as well as an award to the class representatives. Now, following a Fairness Hearing, the Court grants the application.

**BACKGROUND**

The facts of this case are taken from the amended complaint filed on October 16, 2013, ECF No. 39. Plaintiffs allege that Defendants failed to pay wages and benefits for sixty days pursuant to the WARN Acts. They had been employed by Badger Technologies, Inc. ("Badger"), BTI Acquisition, Inc. ("BTI"), Delta Point Capital, III, L.P. ("Delta Point III"), and Delta Point Capital Management, LLC ("Delta Point"). They were terminated as part of a plant closing ordered by Defendants. Plaintiffs allege that all three

---

[1] Plaintiffs have cited to New York Labor Law §§ 921 *et seq.* Compl. ¶ 1. However, N.Y. Lab. L. § 921 is part of the New York Professional Employer Act and specifically addresses minimum net worth, bonding and reporting, whereas § 860 states "[t]his article shall be known and may be cited as the 'New York state worker adjustment and retraining notification act'". N.Y. Lab. Law § 860 (McKinney 2008).

named defendants were a "single employer" for the purposes of the WARN Acts. Plaintiffs allege in their amended complaint that Defendants are jointly and severally liable under the WARN Acts for the failure to provide Plaintiffs and the other similarly situated former employees at least 60 days advance written notice under the Federal WARN Act, and 90 days advance written notice pursuant to the NY WARN Act.

The settlement amount is $125,000.00. Its distribution is agreed to as follows: (a) the sum of $5,000 to each of the Class Representatives, Joe Knapp, and Chad Notebaert, for their services rendered in this action (the "Service Payments") (b) the sum of $38,333, representing one third of the settlement amount, after payment of the Service Payments, shall be paid to Class Counsel as fees, and up to $20,000 as costs; (c) the balance of $56,667 shall be divided among Class Members, who do not opt-out of this settlement, based on the wage rate each was earning at Badger just before the closing.

The proposed attorney fee for class counsel, amounting to $38,333, comprises approximately 31% of the total settlement, and 33⅓% of the settlement amount after payment of the Service Payments. The notice that was mailed to every class member specifically set for the amount of the attorney's fees sought and "no class members objected to the reasonableness of the settlement or the fees and expenses sought." McCrary Decl. ¶ 8, Feb. 2, 2015, ECF No. 56.

On October 16, 2014, the Court entered an Order pursuant to Federal Rule of Civil Procedure 23 preliminarily approving the settlement reached by the parties, approving the form and manner of the class notice, and scheduling a fairness hearing. Or-

der, ECF No. 54. The fairness hearing took place on February 5, 2015, and the Court directed the parties to submit proposed findings of fact for the Court's consideration.

## ANALYSIS

### I. Final Approval of the Class Action

Class actions are governed generally by Federal Rule of Civil Procedure 23. Pursuant Rule 23(a) and (b)(3), and based upon the entire record in this action, the Court finds that the instant action may properly be maintained as a class action because: (a) the number of class members is so numerous that joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims of the representative plaintiffs are typical of the claims of the class; (d) the representative plaintiffs will fairly and adequately represent the interests of the Class; (e) questions of law and fact common to the members of the class predominate over any questions affecting only individual members; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Accordingly, the Court having previously made preliminary findings that the prerequisites for class action treatment under Fed. R. Civ. P. 23 were met, it now hereby gives final approval to the certification of this matter as a class action.

The class consists of all former employees of Badger Technologies, Inc., who were terminated and/or laid off without cause from their employment at the facility located at 5829 County Road 41, Farmington, New York 14425 (the "Facility") on or about August 13, 2012, or thereafter, as part of, or as the reasonably expected consequence of, the mass layoff or plant closing ordered on or about August 13, 2012, or thereafter, as defined by Federal WARN Act and the New York WARN Act, who do not file a timely request to opt-out of the class.

## II. *Settlement of Plaintiffs' Claims*

Rule 23(e) of the Federal Rules of Civil Procedure provides that "[a] class action shall not be dismissed or compromised without the approval of the court." In this Circuit there are nine factors to consider in determining the fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Blech Securities Litigation*, No. 94 CIV. 7696 (RWS), 95 CIV. 6422 (RWS), 2000 WL 661680 at *3–4 (S.D.N.Y. May 19, 2000) (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974)). Moreover, the Court must also consider

> the negotiating process by which the settlement was reached, which must be examined in light of the experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves. The court has a fiduciary duty to ensure that the settlement is not the product of collusion. So long as the integrity of the arm's length negotiation process is preserved, however, a strong initial presumption of fairness attaches to the proposed settlement, and great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.

*Id.* at *4 (citations and internal quotations omitted).

Applying the foregoing principles to the facts of this case, the Court makes the following findings.

### *(1) The complexity, expense, and likely duration of the litigation.*

As set forth in the Parties' Joint Motion for Order (1) Preliminarily Approving Settlement Agreement; (2) Approving Form and Manner of Notice to the Class; (3) Scheduling a Final Fairness Hearing for the Final Consideration and Approval of the Settle-

ment; and (4) Finally Approving the Settlement, ECF No. 52, and as represented by counsel, the litigation in this case is complicated, protracted and expensive. It has been already to this point. This matter has been pending since late 2012. While much discovery has been done, there is still more discovery that would be necessary to prepare the matter for trial. The matter has already involved hundreds of hours of legal work and thousands of dollars of expenses. Those hours and those expenses would increase significantly, absent settlement, as more discovery is conducted, dispositive motion practice is undertaken, and trial preparation work is done. Additionally, while complicated issues—such as whether the Defendants are a "single employer" under the WARN Acts, whether Defendants are entitled to the Unforeseeable Business Circumstances defense and/or whether Defendants are entitled to the Faltering Company defense—are argued and decided, even more time will pass and class members will wait even longer to learn if they can recover on their alleged WARN Act claims.

*(2) The reaction of the class to the settlement.*

The reaction of the class to the settlement was positive. There was not a single objection to the settlement. Only two members of the class opted-out.

*(3) The stage of the proceedings and the amount of discovery completed.*

As noted above, this litigation has been active since late 2012. The pleadings have been amended, parties have been added, the parties have exchanged multiple sets of paper discovery, there has been third-party discovery from the purchaser of Defendant Badger Technologies, Inc. (who ended up with much of the Defendant's electronic files after the purchase), and from M&T Bank (Defendant Badger's commercial lender which ultimately foreclosed on Defendant Badger and sold its assets), as well as numerous informal exchanges of information and documents between the Parties. It

should also be noted that before settlement was reached, the case was unsuccessfully mediated.

### *(4) The risks of establishing liability and (5) the risks of establishing damages.*

The risks of being unable to establish liability and damages are significant. Plaintiffs' principal impediment to recovery in this case is proving that the Defendants should all be treated as a "single employer" under WARN Act doctrine. Establishing "single employer" liability is difficult, even in the parent/subsidiary context. Here, in the equity sponsor/portfolio company context, it is even more difficult. Further, even if Plaintiffs were able to establish that Defendants were all a "single employer," Defendants have asserted defenses which could bar Plaintiffs from establishing liability and recovering any damages. If Plaintiffs were unable to establish "single employer" liability, they would be left without any recovery even if they prevailed against their direct employer, because their direct employer—Badger Technologies, Inc.—was foreclosed on by its commercial lender and all of its assets were sold to satisfy obligations to that lender, leaving nothing to satisfy a judgment in this case.

### *(6) The risks of maintaining the class action through the trial.*

There is not much risk of maintaining the class action through trial. A class has been previously certified and there are no known attempts to decertify that class. Further, cases under the WARN Acts are particularly amenable to class treatment.

### *(7) The ability of the defendants to withstand a greater judgment.*

While the alleged "single employer" Defendants may be able to withstand a greater judgment than the settlement amount, as noted above, Plaintiffs' direct employer is incapable of satisfying any judgment.

### *(8) The range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the*

> ***settlement fund to a possible recovery in light of all the attendant risks of litigation.***

The settlement is well within the range of reasonableness given the uncertainty of establishing liability and damages, and the additional hurdle of being able to collect on any judgment against Plaintiffs' direct employer in this case. The proposed settlement falls within the range of reasonable litigation possibilities as there is a chance that some or all of the Defendants could be found liable for a judgment of approximately $550,000 if the class prevails to the fullest extent on all of its claims. If unsuccessful, the class could receive nothing, or have their recovery significantly reduced, if Defendants prevail on their defenses. Defendants can cap their liability exposure, in addition to avoiding further discovery, motion practice and potentially a trial, which would involve significant time and expense.

Finally, there is no suggestion of collusion between the parties. Having considered all of the foregoing factors, the Court finds that the settlement is fair and reasonable.

### *III. Attorneys' Fees and Expenses*

The Court will now consider Plaintiffs' counsels' request for attorneys' fees in the amount of $38,333.00, expenses in the amount of $18,043.96, and "incentive payments" to the two representative plaintiffs totaling $10,000.00. The Federal WARN Act provides in pertinent part that "in any such suit, the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." 29 U.S.C. § 2104(a)(6) (1988). New York Labor Law provides in pertinent part that "[t]he court may award reasonable attorneys' fees as part of costs to any plaintiff who prevails in a civil action brought under this article." N.Y. Lab. Law § 860-g (McKinney 2008). The legal principles to be applied are clear:

> It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to a reasonable fee—set by the court—to be taken from the fund. Determination of "reasonableness" is within the discretion of the district court. There are two methods by which the district court may calculate reasonable attorney's fees in a class action, the lodestar or percentage method. Under either method, attention should be paid to the following factors: the time and labor expended by counsel, the magnitude and complexities of the litigation, the risk of the litigation, the quality of representation, the requested fee in relation to the settlement, and public policy considerations.
>
> Using the lodestar method, the court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate. The final step is to consider whether an enhancement of the lodestar is warranted, taking into account such factors as: (i) the contingent nature of the expected compensation for services rendered; (ii) the consequent risk of non-payment viewed as of the time of filing the suit; (iii) the quality of representation; and (iv) the results achieved.
>
> The second method is the much simpler percentage method, by which the fee award is simply some percentage of the fund created for the benefit of the class. This method has been found to be a solution to some problems raised by the lodestar method. First, it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions. Second, it decreases plaintiff lawyers' incentive to run up the number of billable hours for which they would be compensated by the lodestar method. And finally, it decreases the incentive to delay settlement because the fee for the plaintiffs' attorneys does not increase with delay. Nonetheless, the Second Circuit encourages courts using the percentage method to require documentation of hours as a "cross-check" on the reasonableness of the requested percentage.

*In re Interpublic Securities Litigation*, No. 02 Civ. 6527 (DLC), 03 Civ. 1194 (DLC), 2004 WL 2397190 at *10–11 (S.D.N.Y. Oct. 26, 2004) (citations omitted).

When considering the reasonableness of counsels' time sheets and expense records,

> the Court looks to its own experience generally as well as to the evidentiary submissions and arguments of the parties. The Second Circuit has determined that the district court is not required to set forth item-by-item findings concerning what may be countless objections to individual billing items. Counsel seeking fees must keep accurate and current records of

9

work done and time spent. The time records must be contemporaneous and detailed, specifying for each attorney the date, the hours expended, and the nature of the work done. Time records should enable the court to determine the nature of the tasks performed and the amount of time reasonably required to perform those tasks. Where documentation of hours is vague or incomplete, the court may reduce the award. Because it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application, courts apply across-the-board percentage cuts as a practical means of trimming fat from a fee application.

*In re Painewebber Ltd. Partnerships Litigation*, No. 94 Civ. 8547 (SHS), 2003 WL 21787410 at *4 (S.D.N.Y. Aug. 4, 2003) (citations and internal quotation marks omitted).

Case law supports Plaintiffs' argument that a one-third fee is commonly awarded in WARN Act cases. As the district court observed in *Guippone v. BH S&B Holdings, LLC*, No. 09 Civ. 01029 (CM), 2011 U.S. Dist. LEXIS 126026, 24–27 (S.D.N.Y. Oct. 28, 2011):

> In class settlement funds like this one, a one-third award of the settlement proceeds is considered typical and reasonable. In finding one-third to be reasonable, the *Stefaniak* court noted that a one-third award is "typical in class action settlements in the Second Circuit," and that "[t]he attorneys' fees requested were entirely contingent upon success. Proposed Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Id. See also, Gilliam v. Addicts Rehabilitation Center Fund*, 2008 U.S. Dist. LEXIS 2301614 (S.D.N.Y. Mar. 24, 2008) (court found the one-third award to be reasonable without engaging in a lodestar cross-check, stating that an award of one-third "is consistent with the norms of class litigation in this circuit"); *Strougo*, 258 F. Supp. 2d at 262 (finding reasonable an award of one-third the common fund valued at over $1.5 million); *In re Blech Sec. Litig*, No. 94-CV-7696, 2002 U.S. Dist. LEXIS 23170 (S.D.N.Y. Dec. 4, 2002) (the court approved a one-third attorneys' fees award stating that it was consistent with awards in similar cases); *Adair v. Bristol Tech Sys.*, No. 97-CV-5874, 1999 U.S. Dist. LEXIS 17627 (S.D.N.Y. Nov. 16, 1999) (court noted the trend towards applying the percentage method and found one-third award reasonable and consistent with percentage awards in recent decisions); *Frank*, 228 F.R.D. at 188 (court granted a fee request of 40%, recognizing that it is "[t]he trend in the Second Circuit," and "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of the litigation") (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)).

10

> The Court finds that the award of a fee of one-third of the common fund is appropriate. *See Mochnal v. EOS Airlines, Inc.*, Case No. 08-08279 (Bankr. S.D.N.Y. 2008) (awarding attorneys' fees of 33 1/3% of settlement of approximately $1.7 million); *Rasheed v. American Home Mortgage Corp.*, Case No. 07-51688 (Bankr. D. Del. 2007) (awarding undersigned co-class counsel a fee of 33 1/3% of the settlement fund of $6.5 million); *Binford v. First Magnus Capital, Inc.*, 08 - bk-01494 - GBN (Bankr. D. Ariz. 2010) (despite Ninth Circuit attorneys' fees benchmark of 25%, awarding attorneys' fees of 33 1/3% of settlement of $2.6 million case and $2.9 million contingent proceeds); *Updike v. Kitty Hawk Cargo, Inc.*, Case No. 07-04179 (Bankr. N.D. Tex. 2007) (awarding attorneys' fees of 33 1/3% of $1.4 million); *Bridges v. ContinentalAFA Dispensing Co.*, Case No. 08-45921 (Bankr. E.D. Mo. 2008)(awarding attorneys' fees of 33 1/3% of $1.5 million); *Johnson v. First NLC Financial Services*, LLC, Case No. 08-01130 (Bankr. S.D. Fla. 2008) (awarding attorneys' fees of 33 1/3% of $400,000); and *Aguiar v. Quaker Fabric Corporation*, Case No. 07-51716 (Bankr. D. Del. 2007) (awarding attorneys' fees of 33 1/3% of $1 million). And in more than 30 WARN actions class counsel was awarded a one-third fee.

*Guippone*, 2011 U.S. Dist. LEXIS 126026, 24–27 (footnote citing further cases in support omitted).

Overall, Mary Elizabeth Olsen, Esq., spent 75.50 hours and billed at $550 per hour; M. Vance McCrary, Esq., spent 78.70 hours and billed at $500 per hour; and David C. Tufts, Esq., spent 69.75 hours and billed at $300 per hour. Not included in the billing are the hours spent preparing for and attending the Fairness hearing or paralegal time. McCrary Decl. ¶ 9 & n.7.

The time sheets show 33 hours alone spent drafting the complaint and class certification. Counsel also spent 9.3 hours preparing for mediation, not including review of Defendants' mediation statements and engagement in the mediation. Of course, the Court would not permit counsel to charge billable hours at the full rate for travel to the mediation site, which amounted to 10 hours at a price of $5,500. However, in view of the substantial reduction in the overall fee as a result of the settlement (from $101,800.00 to $38,333.00), the Court need not engage in a line-by-line assessment of

11

the reasonableness of the agreed-upon fee here. Further, the Court finds the $5,000.00 payment to each of the class representatives to be reasonable.

Counsel also submitted an itemized statement of costs, which total $18,043.96. ECF No. 56-1. The Court has reviewed those costs and finds them to be reasonable.

## CONCLUSION

For all of the foregoing reasons, the parties' joint application, ECF No. 52, is granted. The Settlement Agreement attached to the Joint Motion is approved as fair, reasonable, and adequate. The parties are authorized to implement its terms. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Decision and Order.

IT IS SO ORDERED

Dated: June 15, 2015
       Rochester, New York

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge